1  SEAN P. GATES (CA SBN 186247)
   SGates@mofo.com
2  MORRISON & FOERSTER LLP
   707 Wilshire Boulevard
3  Los Angeles, California 90017-3543
   Telephone: 213.892.5200
4
   Attorney for Plaintiffs
5  JOHN DOE I, JOHN DOE II, JOHN
   DOE III, JOHN DOE IV, AND JOHN
6  DOE V

7

8

9                   UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF CALIFORNIA
10

11

12  JOHN DOE I, JOHN DOE II, JOHN DOE       Case No.
    III, JOHN DOE IV, AND JOHN DOE V,
13
                      Plaintiffs,
14
          v.
15
    PURE FOREST, LLC, JEFF
16  WADSWORTH,
    OWEN WADSWORTH,
17
                      Defendants.
18

19                            **COMPLAINT**

20        Plaintiffs John Doe I, John Doe II, John Doe III, John Doe IV, and John Doe

21  V (collectively, "Plaintiffs") are victims of human trafficking who proceed under

22  pseudonyms due to a reasonable fear of retaliation due to threats of bodily injury or

23  death made by defendants, either directly or through their agents. Plaintiffs allege

24  as follows:

25                            **PARTIES**

26        1.    Plaintiffs are citizens of Mexico who were recruited by defendants to

27  enter the United States to perform labor for defendant Pure Forest, LLC ("Pure

28  Forest"). Plaintiffs entered the United States lawfully in April and July 2012 on H-

                                       1

1   2B visas.

2        2.      Defendant Pure Forest is a limited liability corporation organized
3   under the laws of the State of Idaho.  Its principal place of business is in Oakley,
4   Idaho.  On information and belief, among other things, Pure Forest grows, harvests,
5   and sells Christmas trees.

6        3.      Pure Forest has registered in California as a Foreign Limited Liability
7   Company since at least 2009.

8        4.      Defendant Jeff Wadsworth is the Chief Executive Officer and a
9   member of Pure Forest.

10        5.      Defendant Owen Wadsworth is a member of Pure Forest.

11        6.      Upon information and belief, Pure Forest engages in interstate
12   commerce through the production, distribution, and sale of its products in a
13   multistate area.

14                        **JURISDICTION AND VENUE**

15        7.      The Court has jurisdiction pursuant to 18 U.S.C. §§ 1595 and 1964(c);
16   28 U.S.C. §§ 1331, 1332, 1337(a), and 1350; and 29 U.S.C. §§ 216(b) and 1854.
17   This Court also has supplemental jurisdiction over Plaintiffs' state claims pursuant
18   to 28 U.S.C. § 1367.

19        8.      Venue is proper pursuant to 28 U.S.C. § 1391(b), as a substantial part
20   of the events giving rise to this action occurred within this district and defendants
21   do business in this district.  Venue is also proper pursuant to 28 U.S.C. § 1391(c),
22   as defendants Pure Forest, Jeff Wadsworth, and Owen Wadsworth are subject to
23   personal jurisdiction in the state of California. Venue is also proper pursuant to 18
24   U.S.C. § 1965.

25                        **STATEMENT OF FACTS**

26   Fraudulent Recruitment of John Doe I, John Doe II, and John Doe III

27        9.      Acting through its Mexican national employees Pure Forest recruited
28   individuals, including Plaintiffs, to travel to the United States to perform labor.

                                2

10. Acting with the authorization of Pure Forest and, on information and belief, at the direction of defendants Jeff Wadsworth and Owen Wadsworth, the Mexican recruiter offered work to Mexican nationals, including three Plaintiffs: John Doe I, John Doe II, and John Doe III ("Does I-III").

11. Through its Mexican recruiter and, on information and belief, at the direction of Jeff Wadsworth and Owen Wadsworth, Pure Forest made fraudulent representations to Does I-III, promising that Pure Forest would employ Does I-III in California to do deforestation work for forty hours a week at a wage of $16.47 per hour for nine months. Pure Forest also promised that it would pay for the visa and travel expenses for Does I-III. In addition, Pure Forest promised that it would provide Does I-III with all meals during their time of employment and would provide trailers for lodging. Does I-III accepted this offer.

12. Pure Forest scheduled interviews at the U.S. embassy for Does I-III to apply for their visas. Each obtained an H-2B visa.

13. Pure Forest arranged for Does I-III to travel to the United States. Sometime after April 1, 2012, U.S. CIS inspected and admitted Does I-III on the H-2B visas.

14. In Gerber, California, Does I-III and other workers were divided amongst the Pure Forest "bosses." Does I-III were assigned to work under one Pure Forest supervisor. The Pure Forest supervisor took the Plaintiffs to a remote work location in the Sierra Nevada mountains.

15. When the Plaintiffs arrived at the work site they were given nothing but a tent to sleep in. Does I-III were forced to share a tent because there were not enough for all of the workers. Does I-III were each forced to buy a sleeping bag from Pure Forest for $35.

Fraudulent Recruitment of John Doe IV and John Doe V

16. Through Pure Forest's Mexican recruiters Pure Forest recruited Plaintiffs John Doe IV and John Doe V ("Does IV-V"). Through these Mexican

3

1    recruiters and, on information and belief, at the direction of Jeff Wadsworth and

2    Owen Wadsworth, Pure Forest made fraudulent representations to Does IV-V. The

3    manner of recruitment was nearly identical to the recruitment of Does I-III. Pure

4    Forest offered work in California to do deforestation work for forty hours a week at

5    a rate of $16.47 an hour for nine months. Pure Forest promised that it would pay

6    for the visa and travel expenses for Does IV-V. In addition, Pure Forest promised

7    that it would provide Does IV-V with all meals during their time of employment

8    and would provide trailers for lodging. Does IV-V accepted this offer.

9          17.     Pure Forest scheduled interviews at the U.S. embassy for Does IV-V to

10   apply for their visas. Each obtained an H-2B visa.

11          18.     Pure Forest arranged for Does IV-V to travel to the United States. U.S.

12   CIS inspected and admitted each of them on H-2B visas in July 2012.

13          19.     Once in Sacramento, California, Does IV-V and other workers were

14   separated into groups and assigned to work under Owen Wadsworth. Owen

15   Wadsworth took Does IV-V to a remote work location in the Sierra Nevada

16   mountains.

17          20.     Does IV-V were given only a tent to sleep in.

18          Confiscation of Plaintiff's Passport

19          21.     John Doe III had his passport taken by Pure Forest when he arrived in

20   Gerber, California. Pure Forest retained the passport for several weeks before

21   returning it to John Doe III.

22          22.     John Doe IV had his passport, identification cards and other

23   documents taken by defendant Owen Wadsworth. John Doe IV asked to have these

24   documents returned when they were told the work was done and they needed to

25   leave. Pure Forest would not return the documents upon request.

26          Oppressive Working Conditions

27          23.     Once each group of Plaintiffs arrived in the mountains, they were

28   required by defendants to plant trees and spray chemicals on the surrounding

4

la-1233026

1   ground.  Plaintiffs did not receive proper attire or equipment for working with the
2   tools and chemicals.  Plaintiffs received no training.

3       24.    Plaintiffs were forced to carry chemical containers on their backs.  The
4   containers often leaked, resulting in chemical burns on Plaintiffs' backs and hands.
5   Plaintiffs' eyes are red and irritated from the constant exposure to the chemicals.

6       25.    Doe V became ill from chemical exposure.  He often woke up
7   nauseous and dizzy from the chemicals.  He also cut his hand during work.
8   Defendants would not let him rest while he was injured.  Defendants did not
9   provide any medication or first aid for these injuries.

10      26.    Plaintiffs suffered anxiety worrying about the long-term effects they
11  would suffer due to the harmful chemicals they were using.

12      27.    Pure Forest supervisors were always armed; they carried weapons and
13  had weapons in their vehicles.  Pure Forest supervisors, under the supervision of
14  Jeff Wadsworth and Owen Wadsworth, constantly threatened Plaintiffs and the
15  other workers, telling them repeatedly that they would shoot them and leave them
16  for dead if they did not continue to work.  For instance, John Doe I witnessed one
17  Pure Forest supervisor tell another worker that he would put a bullet in his head.
18  John Doe I was paralyzed with fear.  The Pure Forest supervisors also used abusive
19  and crude language to berate the Plaintiffs and other workers, eroding their
20  confidence.

21      28.    The Pure Forest supervisors often would shoot their guns off in the
22  middle of the night to scare the workers.  Plaintiffs reasonably feared for their lives.

23      29.    The Pure Forest supervisors, under the supervision of Jeff Wadsworth
24  and Owen Wadsworth, inflicted this psychological and verbal abuse to coerce
25  Plaintiffs into believing that they would be seriously harmed if they did not work at
26  a fast pace or tried to leave Pure Forest.

27      30.    Plaintiffs were forced to work twelve to thirteen hours each day, six
28  days a week, regardless of the weather conditions.  Plaintiffs were not permitted

COMPLAINT

la-1233026

1  breaks to rest in the summer in order to take shelter from the heat. Plaintiffs were
2  forced to work outdoors in the rain.

3      31.    Plaintiffs received only one short break for a meal and water during
4  the long work days. Plaintiffs would often not eat because the food was rotten.
5  They were forced to drink unpurified water directly from the river. Plaintiffs only
6  source of water for showering was also the river.

7      32.    On Sundays the Plaintiffs would be required to prepare for the next
8  week; they would sharpen tools, mix chemicals, and wash their clothes. Plaintiffs
9  did not have a day off during their time with Pure Forest.

10      33.    On Sundays Plaintiffs were taken to town to wash their clothes. Pure
11  Forest's drivers would watch them closely while in town to make sure they did not
12  speak with anyone. The laundry mat owners eventually told Plaintiffs they could
13  not use the washing machines due to all of the chemicals on their clothing.
14  Plaintiffs were forced to use what little money they had saved to buy a used
15  washing machine from one Pure Forest supervisor.

16      34.    Plaintiffs continued to work only because they had no other option.
17  They were disoriented, confused, stuck in a remote part of the Sierra Nevada
18  mountains miles from the nearest town, and they were in a foreign country where
19  they did not speak the language. Plaintiffs felt trapped, they believed they had no
20  choice other than to do as they were told. They feared that they would not ever be
21  permitted to leave. Plaintiffs were terrified that they would face serious harm if
22  they did not continue to work. Plaintiffs suffered from serious stress, lack of sleep,
23  and anxiety caused by these circumstances.

24      35.    Plaintiffs also feared for the safety of their families. The Pure Forest
25  supervisors, under the supervision of Jeff Wadsworth and Owen Wadsworth,
26  intimidated Plaintiffs by threatening to harm their families in Mexico.

27      36.    It was in the interest of Pure Forest, and with the actual or constructive
28  knowledge of Jeff Wadsworth and Owen Wadsworth, that the Pure Forest

6

1   supervisors intimidated, defrauded, and coerced Plaintiffs as described above.

2           Defendants' "Deductions" From Plaintiffs' Pay

3           37.     Plaintiffs were "paid" in cash by Pure Forest every two weeks.
4   Although Plaintiffs were given paystubs showing payment for 40 hours of work at
5   $16.50 an hour, the paystubs did not show the "deductions" taken out by Pure
6   Forest, including for travel expenses and each Plaintiffs' visa. Plaintiffs had not
7   been previously informed about these deductions. When Plaintiffs complained
8   about these deductions, they were told that they had to pay for these items.
9   Plaintiffs had no recourse.

10          38.     Plaintiffs were each forced to pay for food and to give $60 to the cook
11  using what little cash they were given. Plaintiffs had not been previously informed
12  about these expenses. After the deductions, Plaintiffs were left with essentially no
13  money.

14          39.     Defendants Jeff Wadsworth and Owen Wadsworth were fully aware of
15  the deductions taken from Plaintiffs' pay.

16          40.     Does II and V complained to a Pure Forest supervisor about the
17  deductions that were being taken out of each pay check. Plaintiffs asked Jeff
18  Wadsworth how much they owed for the visa and travel expenses. Plaintiffs were
19  never given an answer.

20          41.     The "deductions" continued for the entire time Plaintiffs worked for
21  Pure Forest.

22          42.     Plaintiffs never received a tax statement from defendants.

23          Defendants' Failure to Pay Wages

24          43.     Upon information and belief, Pure Forest failed to keep accurate wage
25  and hour records as required by federal and state law.

26          44.     Due to the deductions made by defendants described in paragraphs 37
27  through 41, Plaintiffs' hourly wages fell below both state and federal minimum
28  wage requirements.

7

45.     Defendants failed to pay the wage rate promised to the Plaintiffs at the time of their recruitment in Mexico.

46.     Defendants failed to pay the Plaintiffs for all of the hours they worked in each workweek.

47.     Although Plaintiffs worked well over forty hours in each workweek, defendants failed to pay Plaintiffs overtime at the rate of one and a half times the regular rate of pay for their overtime hours in excess of 8 hours per day and/or 40 hours per week, as required by federal law, state law, and the foreign labor certification.  Defendants failed to pay Plaintiffs overtime at the rate of two times the regular rate of pay for their overtime hours in excess of twelve hours per day, as required by state law.  Defendants knew or should have known that Plaintiffs were working extremely long hours each week and were not receiving the wages to which the Plaintiffs were entitled by law.

Plaintiffs Leave Pure Forest

48.     On about October, 2012 Plaintiffs were told that there was no more work for them.  They were taken to a bus stop where a Pure Forest supervisor paid for bus tickets with money that had been withheld from the Plaintiffs' last pay checks.

49.     The Pure Forest supervisors, under the supervision of Jeff Wadsworth and Owen Wadsworth, threatened Plaintiffs and the other workers.  The Pure Forest supervisors warned them not to tell anyone what had happened, and they threatened to harm Plaintiffs' and the other workers' families if they did tell anyone.

**FIRST CLAIM FOR RELIEF**
FAIR LABOR STANDARDS ACT ("FLSA")
*(All Defendants)*

50.     Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 49 of this complaint as if full set forth herein.

51.     At all times relevant to this case, defendants were employers within the meaning of 29 U.S.C. § 203(d).

8

la-1233026

52. Defendants failed to pay Plaintiffs the federal statutory minimum wage during the time they were employed by defendants, in violation of 29 U.S.C. § 206(a)(1).

53. Defendants failed to pay Plaintiffs overtime pay for all hours that they worked in excess of forty per week in violation of 29 U.S.C. § 207(a)(1).

54. Defendants made unlawful deductions from Plaintiffs' wages. These unlawful deductions cumulatively brought Plaintiffs' wages below the statutory minimum in violation of 29 U.S.C. § 211(c).

55. Defendants made deductions from Plaintiffs' wages for their transportation fees to the United States and the associated visa fees, which were expenses incurred primariiy for the benefit of the defendant employers, in violation of 29 C.F.R. § 531.35. Because of defendants' deductions, Plaintiffs were not paid all wages free and clear during their employment, in violation of 29 U.S.C. § 206(a)(1).

56. As a result of these violations, Plaintiffs suffered damages.

57. Plaintiffs are entitled to an award of damages for unpaid minimum wages and unpaid overtime, plus liquidated damages in an equal amount and interest, as well as attorneys' fees, in an amount to be determined at trial. 29 U.S.C. § 216(b).

**SECOND CLAIM FOR RELIEF**
MIGRANT AND SEASONAL AGRICULTURAL
WORKER PROTECTION ACT ("AWPA")
*(All Defendants)*

58. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 57 of this complaint as if set fully set forth herein.

59. At all times relevant to this case, defendants were agricultural employers within the meaning of 29 U.S.C. § 1802(2).

60. At all times relevant to this case, the Plaintiffs were migrant agricultural workers within the meaning of 29 U.S.C. § 1802(8)(A).

9

61.  Defendants intentionally violated AWPA by:

    a. Failing to disclose in writing, to each Plaintiff at the time of that Plaintiff's recruitment, complete and accurate information about the employment, as required by 29 U. S.C. § 1821(a), including:

        i.  The wage rates to be paid, 29 U. S.C. § 1821(a)(2);

        ii. The crops and kinds of activities on which the worker may be employed, 29 U.S.C. § 1821(a)(3);

        iii. The period of employment, 29 U.S.C. 1821(a)(4);

        iv. The transportation, housing, and any other employment benefit to be provided, and any costs to be charged for each of them, 29 U.S.C. § 1821(a)(5); and

        v.  Whether State workers' compensation insurance is provided, 29 U.S.C. § 1821(a)(8).

    b. Failing to post, in a conspicuous place, a statement of Plaintiffs' rights and protections under the AWPA, in violation of 29 U. S.C. § 1821(b);

    c. Failing to post or present each worker with a statement of the terms and conditions of occupancy of the housing, in violation of 29 U.S.C. § 1821(c);

    d. Failing to make, keep, and preserve records for each Plaintiff, as required by 29 U.S.C. § 1821(d)(1);

    e. Failing to provide each Plaintiff with an itemized written statement of the information contained in such records every pay period, as required by 29 U.S.C. § 1821(d)(2);

    f. Knowingly providing false or misleading information concerning the terms and conditions of employment in violation of 29 U.S.C. § 1821(f);

la-1233026

1             g. Failing to pay the wages owed to each worker when due, in

2                 violation of 29 U.S.C. § 1822(a);

3             h. Requiring Plaintiffs purchase goods in violation of 29 U.S.C.

4                 § 1822(b);

5             i. Violating, without justification, the terms of the working

6                 arrangement in violation of 29 U.S.C. § 1822(c);

7             j. Failing to ensure that the housing in which defendants forced

8                 Plaintiffs to live met federal and state health and safety codes, in

9                 violation of 29 U.S.C. § 1823(a);

10            k. Housing Plaintiffs without first securing the certification

11                required by 29 U.S.C. § 1823(b); and

12            l. Discriminating against and intimidating Plaintiffs for voicing

13                complaints about their working conditions, in violation of 29

14                U.S.C. § 1855(a).

15     62.    As a result, Plaintiffs suffered damages.

16     63.    Defendants are jointly and severally liable to Plaintiffs for these

17 violations of their rights under federal law.

18                             **THIRD CLAIM FOR RELIEF**
FAILURE TO PAY MINIMUM WAGE AND OVERTIME

19                   (Cal. Lab. Code §§ 1194, 1194.2,1197, and 1198)
*(Defendant Pure Forest)*

20

21     64.    Plaintiffs repeat and re-allege the allegations contained in paragraphs 1

22 through 63 of this complaint as if fully set forth herein.

23     65.    By virtue of defendant Pure Forest's unlawful failure and refusal to

24 pay Plaintiffs wages in the amount and at the time due as required by law, Plaintiffs

25 have suffered damages in amounts to be proven at trial, and are entitled to all

26 appropriate penalties provided by the Labor Code and the Industrial Welfare

27 Commission ("IWC") Wage Orders, including liquidated damages.

28

11

## FOURTH CLAIM FOR RELIEF
### FAILURE TO PAY MINIMUM WAGE AND OVERTIME
(Cal. Lab. Code §§ 1197.1)
*(All Defendants)*

66.     Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 65 of this complaint as if fully set forth herein.

67.     By virtue of defendants' unlawful failure and refusal to pay Plaintiffs' wages in the amount and at the time due as required by law, Plaintiffs have suffered damages in amounts to be proven at trial, and are entitled to all appropriate penalties provided by the Labor Code and the Industrial Welfare Commission ("IWC") Wage Orders, including penalties of $100 for each Plaintiff for the initial violation and an additional $250 for each Plaintiff for each subsequent pay period for which Plaintiffs were underpaid under California Labor Code § 1197.1(a).

## FIFTH CLAIM FOR RELIEF
### FAILURE TO PROVIDE MEAL BREAKS AND REST BREAKS
(Cal. Lab. Code § 226.7)
*(Defendant Pure Forest)*

68.     Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 67 of this complaint as if fully set forth herein.

69.     Defendant Pure Forest routinely and repeatedly refused to provide Plaintiffs with adequate meal periods, and to authorize or permit Plaintiffs to take rest period, in violation of California Labor Code § 226.7 and applicable IWC Wage Orders.

70.     By virtue of its unlawful refusal to allow Plaintiffs meal and rest periods, to which they were entitled to by law, defendant Pure Forest is liable to Plaintiffs for statutory damages in an amount equal to one hour of wages for each day that an adequate rest period was not authorized or permitted, and one hour of wages for each day that an adequate meal period was not provided, in amounts to be proven at trial.

## SIXTH CLAIM FOR RELIEF
### FRAUDULENT MISREPRESENTATION

12

la-1233026

1   (Cal. Civ. Code §§ 970, 1709, 1710)
    *(All Defendants)*

2

3   71.   Plaintiffs repeat and re-allege the allegations contained in paragraphs 1

4   through 70 of this complaint as if fully set forth herein.

5   72.   Defendants committed fraud by representing, either directly or through

6   their agents, to Plaintiffs that they would be paid $16.47 per hour and work 40

7   hours per week.  Defendants falsely represented to Plaintiffs that they would not

8   need to pay for their transportation to California or their visa expenses.  Further,

9   defendants falsely represented to Plaintiffs that they would have a decent place to

10  sleep and would not need to pay for food.

11  73.   When defendants made these representations to Plaintiffs, defendants

12  knew these representations to be false.

13  74.   Defendants made these representations in order to induce Plaintiffs to

14  travel to the United States and to perform labor for defendants.

15  75.   Plaintiffs relied on defendants' representations to their detriment.

16  76.   Plaintiffs were justified in their reliance on defendants' fraudulent

17  representations.

18  77.   Plaintiffs are entitled to monetary damages in an amount equivalent to

19  double the detriment they suffered by relying upon defendants' fraudulent

20  representations.

21  **SEVENTH CLAIM FOR RELIEF**
    NEGLIGENT MISREPRESENTATION
22  (Cal. Civ. Code §§ 1709, 1710)
    *(All Defendants)*

23

24  78.   Plaintiffs repeat and re-allege the allegations contained in paragraphs 1

25  through 77 of this complaint as if fully set forth herein.

26  79.   Defendants made false representations, either directly or through their

27  agents, to Plaintiffs about the circumstances of their employment in the United

28  States, including, but not limited to, making false representations about the amount

13

la-1233026

1 and manner of payment.

2     80.    Defendants had no reasonable grounds for believing their

3 representations to Plaintiffs were true.

4     81.    Defendants intended for Plaintiffs to rely on their false statements and

5 misrepresentations.  Plaintiffs justifiably relied on defendants' misrepresentations.

6     82.    Plaintiffs were unaware of defendants' true intentions, and had they

7 been aware of such facts, would not have left Mexico to come to the United States

8 to work for Pure Forest.

9     83.    Plaintiffs were injured as a result of their reliance on defendants' false

10 statements and misrepresentations, which caused Plaintiffs to leave their home,

11 subjected Plaintiffs to exploitation of their labor, and caused Plaintiffs to suffer

12 damages.

13                 **EIGHTH CLAIM FOR RELIEF**
NEGLIGENCE
14                      *(All Defendants)*

15     84.    Plaintiffs repeat and re-allege the allegations contained in paragraphs 1

16 through 83 of this complaint as if fully set forth herein.

17     85.    Defendants stood in a special relationship to Plaintiffs, based on the

18 facts alleged in this Complaint, including but not limited to the following:

19 defendants contracted with Plaintiffs for their employment as laborers, arranged and

20 initially paid for Plaintiffs' travel to the United States, and procured Plaintiffs'

21 agreements based on fraudulent pretenses.  Defendants brought Plaintiffs to a

22 remote location in the Sierra Nevada mountains, knew that Plaintiffs had no

23 familiarity with the culture, society, language or laws of the United States,

24 conspired to hold John Doe IV's passport, and refused to let any of the Plaintiffs

25 leave the premises unaccompanied.  Defendants knew at the time they brought

26 Plaintiffs to the United States that they had no money for return airfare and no other

27 means of earning money in the United States.

28     86.    The California Labor Code imposes duties on employers, including the

1   duty to "do every other thing reasonably necessary to protect the life, safety, and
2   health of employees." Cal. Lab. Code § 6401.

3        87.   By virtue of the relationship described above and defendants' position
4   as Plaintiffs' employers, their duty of reasonable care towards Plaintiffs under the
5   circumstances included but was not limited to: 1) a duty to provide a work
6   environment free of intimidation, threats, and fear; 2) a duty to provide reasonable
7   accommodations and a safe working and living environment; 3) a duty of
8   reasonable care under the circumstances to protect Plaintiffs' emotional state; 4) a
9   duty of reasonable care under the circumstances to protect Plaintiffs' physical well-
10   being; and 5) a duty to ensure Plaintiffs were informed of their rights as employees
11   under the laws of the United States and the State of California. On the basis of the
12   facts alleged in this complaint, defendants assumed a duty to care to Plaintiffs
13   beyond that owed to the public in general, including but not limited to the duties
14   listed above.

15        88.   Defendants breached these duties owed to Plaintiffs by the acts and
16   omissions alleged in this complaint, including but not limited to: subjecting
17   Plaintiffs to threats of death and verbal abuse; failure to allow Plaintiffs one day's
18   rest in seven; and failure to allow or provide Plaintiffs means to leave the premises
19   unaccompanied or contact the outside world.

20        89.   As a direct and proximate cause of defendants' breach of their duty of
21   reasonable care under these circumstances, Plaintiffs have suffered financial harm,
22   serious emotional distress, and other injuries.

23                      **NINTH CLAIM FOR RELIEF**
                        BREACH OF CONTRACT
24                            *(All Defendants)*

25        90.   Plaintiffs repeat and re-allege the allegations contained in paragraphs 1
26   through 89 of this complaint as if fully set forth herein.

27        91.   Defendants collectively entered into contracts with Plaintiffs and each
28   party's acceptance was supported by good and valuable consideration.

15

la-1233026

1       92.    Plaintiffs fulfilled their contractual obligations by traveling to the

2   United States and laboring for defendants.

3       93.    Defendants breached the contracts with Plaintiffs by failing to pay

4   contractually established wages for work performed by Plaintiffs and to cover

5   promised expenses.

6       94.    Because of defendants' breach of contract, Plaintiffs suffered from a

7   loss of expected wages and income.

8       95.    Plaintiffs are entitled to monetary damages equal to the amount

9   specified in contracts entered with defendants.

10  ### TENTH CLAIM FOR RELIEF

11  PROMISSORY ESTOPPEL
    *(All Defendants)*

12      96.    Plaintiffs repeat and re-allege the allegations contained in paragraphs 1

13  through 95 of this complaint as if fully set forth herein.

14      97.    Defendants made a clear and unambiguous promise to pay Plaintiffs

15  pursuant to the terms of the contracts they entered into in exchange for performance

16  of the services described therein.  Plaintiffs actually and reasonably relied upon this

17  promise when agreeing to perform said services and Plaintiffs' reliance on this

18  promise was foreseeable by defendants.

19      98.    Plaintiffs have suffered an injury by not being paid as promised, and

20  their injury can only be avoided by enforcement of defendants' promise to pay

21  Plaintiffs for their services.

22  ### ELEVENTH CLAIM FOR RELIEF

23  UNJUST ENRICHMENT & QUANTUM MERUIT
    *(All Defendants)*

24      99.    Plaintiffs repeat and re-allege the allegations contained in paragraphs 1

25  through 98 of this complaint as if fully set forth herein.

26      100.  By laboring for Pure Forest, Plaintiffs provided benefits to defendants.

27      101.  Plaintiffs expected to be compensated for the labor they provided to

28  defendants. Defendants' unjust failure to pay Plaintiffs prevailing wages for the

16

la-1233026

1 │ labor performed constituted a distinct detriment to the Plaintiffs.

2 │     102.  Accordingly, Plaintiffs are entitled to money damages equal to the

3 │ reasonable value of the labor provided to defendants.

### TWELFTH CLAIM FOR RELIEF
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
*(All Defendants)*

6 │     103.  Plaintiffs repeat and re-allege the allegations contained in paragraphs 1

7 │ through 102 of this complaint as if fully set forth herein.

8 │     104.  Defendants intentionally engaged in extreme and outrageous conduct

9 │ that they knew would cause severe emotional distress for the Plaintiffs or acted in

10 │ reckless disregard of the probability that Plaintiffs would suffer emotional distress.

11 │     105.  Defendants' conduct, either directly or through their agents, which

12 │ intentionally inflicted emotional distress included, but is not limited to, the use of

13 │ coercion (including threats of physical harm) to force Plaintiffs to perform manual

14 │ labor; the withholding of legal documents; the refusal to provide prompt medical

15 │ treatment when needed; the refusal to pay contractually defined wages; the failure

16 │ to identify and remedy workplace violations of federal and state laws; and the

17 │ consistent verbal intimidation and abuse.

18 │     106.  Plaintiffs suffered severe emotion distress that included emotional

19 │ reactions such as fear, humiliation, anger, worry, helplessness, and powerlessness.

20 │ This distress was caused by defendants' intentional acts.

21 │     107.  Further, defendants intentionally engaged in conduct that was

22 │ malicious, oppressive, despicable, and performed with a reckless indifference to the

23 │ interests of Plaintiffs.

24 │     108.  Plaintiffs are entitled to monetary relief for both compensatory and

25 │ punitive damages in an amount to be determined at trial.

### THIRTEENTH CLAIM FOR RELIEF
NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
*(All Defendants)*

28 │     109.  Plaintiffs repeat and re-allege the allegations contained in paragraphs 1

17

1    through 108 of this complaint as if fully set forth herein.

2        110.   Defendants had a duty of reasonable care to Plaintiffs and they

3    breached this duty by acting negligently and failing to exercise reasonable care.

4        111.   Defendants negligently engaged in extreme and outrageous conduct

5    that they knew or should have known involved an unreasonable risk of causing

6    severe emotional distress to the Plaintiffs.

7        112.   Defendants' conduct which negligently inflicted emotional distress

8    included, but is not limited to, the use of physical and mental coercion to force

9    Plaintiffs to perform manual labor; the withholding of legal documents; the refusal

10    to provide prompt medical treatment when needed; the refusal to pay contractually

11    defined wages; the enforced isolation of Plaintiffs from communication with family

12    members; the failure to identify and remedy workplace violations of federal and

13    state laws; and the consistent verbal intimidation and abuse.

14        113.   Plaintiffs suffered severe emotional distress that included emotional

15    reactions such as fear, humiliation, anger, worry, helplessness, and powerlessness.

16        114.   Defendants' negligent acts were the proximate cause of the distress

17    and injuries that Plaintiffs suffered.

18        115.   Plaintiffs acted at all times in a careful and prudent manner and in the

19    exercise of due care and caution.

20        116.   Further, defendants intentionally engaged in conduct that was

21    malicious, oppressive, despicable, and performed with a reckless indifference to the

22    interests of Plaintiffs.

23        117.   Plaintiffs are entitled to monetary relief for both compensatory and

24    punitive damages in an amount to be determined at trial.

25                    **FOURTEENTH CLAIM FOR RELIEF**
TRAFFICKING VICTIMS PROTECTION ACT ("TVPA")

26                   Forced Labor, 18 U.S.C. § 1589

27                       *(All Defendants)*

28        118.   Plaintiffs repeat and re-allege the allegations contained in paragraphs 1

la-1233026

1 | through 117 of this complaint as if fully set forth herein.

2 |     119.  This claim is brought under 18 U.S.C. § 1595 of the Trafficking

3 | Victims Protection Act.

4 |     120.  Defendants subjected Plaintiffs to forced labor in violation of 18

5 | U.S.C. § 1589.

6 |     121.  Defendants, either directly or through their agents, subjected Plaintiffs

7 | to intense psychological and verbal abuse, which was designed to coerce Plaintiffs

8 | into believing that they would suffer serious harm if they were to leave the employ

9 | of defendants in violation of 18 U.S.C. § 1589(2).

10 |     122.  Defendants, either directly or through their agents, closely controlled

11 | and monitored the movements of Plaintiffs in such a way that made Plaintiffs

12 | believed they were physically restrained from leaving the employ of defendants in

13 | violation of 18 U.S.C. § 1589.

14 |     123.  Defendants confiscated Plaintiffs John Doe III and John Doe IV's

15 | passports in violation of 18 U.S.C. § 1592.

16 |     124.  Plaintiffs are entitled to compensatory damages, punitive damages, and

17 | restitution in an amount to be determined at trial and any other relief deemed

18 | appropriate.

19 | **FIFTHTEENTH CLAIM FOR RELIEF**

20 | TVPA
Human Trafficking, 18 U.S.C. § 1590

21 | (*All Defendants*)

22 |     125.  Plaintiffs repeat and re-allege the allegations contained in paragraphs 1

23 | through 124 of this complaint as if fully set forth herein.

24 |     126.  This claim is brought under 18 U.S.C. § 1595 of the Trafficking

25 | Victims Protection Act.

26 |     127.  Defendants recruited Plaintiffs for the purpose of subjecting them to

27 | forced labor in violation of 18 U.S.C. § 1590.

28 |

COMPLAINT

la-1233026

128.   Defendants recruited Plaintiffs in Mexico with the intention of subjecting them to forced labor.  Plaintiffs were told that they would be working in deforestation in California for $16.47 per hour for 40 hours per week.  Instead, they were forced to work many more hours each week for very little pay.

129.   Plaintiffs are entitled to compensatory damages, punitive damages, and restitution in an amount to be determined at trial and any other relief deemed appropriate.

### SIXTEENTH CLAIM FOR RELIEF
CALIFORNIA TRAFFICKING VICTIMS PROTECTION ACT ("CTVPA")
Cal. Civ. Code § 52.5
*(All Defendants)*

130.   Plaintiffs repeat and re-allege allegations contained in paragraphs 1 through 129 of this complaint as if fully set forth herein.

131.   This claim is brought under California Civil Code § 52.5.

132.   Defendants subjected Plaintiffs to forced labor in violation of California Penal Code § 236.1.

133.   Defendants conspired to and used fraud and/or deceit to contract with Plaintiffs for their employment and to bring them to the United States.  Defendants then conspired to and used threats, duress, intimidation, fraud, deceit and/or coercion to overbear Plaintiffs' will, to deprive them of personal liberty by keeping them secluded in a desolate place with no way of contacting their families, and to force them to work for very little wages.

134.   Through such actions, defendants, acting individually and in concert, and with malice, oppression, fraud and/or duress, conspired to and did subject Plaintiffs to a situation of human trafficking.

135.   As a direct and proximate result of these actions, Plaintiffs have sustained damages, including mental suffering, humiliation, emotional distress, economic losses and physical injuries.

136.   Plaintiffs are entitled to actual damages, compensatory damages, and

20

1   punitive damages in an amount to be determined at trial and any other relief
2   deemed appropriate, as well as attorney's fees and costs of suit. California Civil
3   Code § 52.5(b) also entitles victims to treble damages.

**SEVENTEENTH CLAIM FOR RELIEF**
ALIEN TORT CLAIMS ACT, 28 U.S.C. § 1350
Involuntary Servitude & Forced Labor
(*All Defendants*)

7   137.   Plaintiffs repeat and re-allege the allegations contained in paragraphs 1
8   through 136 of this complaint as if fully set forth herein.

9   138.   This Court has jurisdiction over these violations of international law
10  pursuant to the Alien Tort Claims Act, 28 U.S.C. § 1350.

11  139.   Defendants subjected Plaintiffs to involuntary servitude and/or forced
12  labor, which are violations of the law of nations and customary international law as
13  reflected, expressed, and defined in multilateral treaties and other international
14  instruments, international and domestic judicial decisions, and other authorities.

15  140.   One international instrument defines forced labor as "all work or
16  service which is exacted from any person under the menace of any penalty and for
17  which the said person has not offered himself voluntarily." Convention Concerning
18  Forced or Compulsory Labor art. 2, May 1, 1932, 39 U.N.T.S. 55.

19  141.   Defendants, either directly or through their agents, engaged in acts
20  including, but not limited to, psychological coercion, abuse of the legal process, and
21  threats of physical force to exact from Plaintiffs work or service which the Plaintiffs
22  had not offered voluntarily.

23  142.   Aiding and abetting involuntary servitude and/or forced labor is also in
24  violation of the law of nations and treaties of the United States and is actionable
25  through the Alien Tort Claims Act, 28 U.S.C. § 1350.

26  143.   Defendants aided and abetted the imposition of involuntary servitude
27  and/or forced labor by directing, ordering, conspiring to commit, or aiding the
28  imposition of involuntary servitude and/or forced labor.

21

144. Plaintiffs are entitled to compensatory and punitive damages in an amount to be determined at trial and any other relief deemed appropriate.

### EIGHTEENTH CLAIM FOR RELIEF
ALIEN TORT CLAIMS ACT, 28 U.S.C. § 1350
Human Trafficking
*(All Defendants)*

145. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 144 of this complaint as if fully set forth herein.

146. This Court has jurisdiction over this violation of international law pursuant to the Alien Tort Claims Act, 28 U.S.C. § 1350.

147. Defendants engaged in human trafficking, which is a violation of the law of nations and customary international law as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

148. The U.N. Protocol to Prevent, Suppress, and Punish Trafficking in Persons, of which the United States became a signatory in 2000, defines human trafficking as:

> [T]he recruitment, transportation, transfer, harbouring or receipt of persons, by means of the threat or use of force or other forms of coercion, of abduction, of fraud, of deception, of the abuse of power or of a position of vulnerability or of the giving or receiving of payments or benefits to achieve the consent of a person having control over another person, for the purpose of exploitation.

Protocol to Prevent, Suppress, and Punish Trafficking in Persons, Especially Women and Children, Supplementing the United Nations Convention Against Transnational Crime, G.A. Res. 55/25, Annex II, U.N. GAOR, 55th Sess., U.N. Doc. A/Res/55/25 at 32 (Jan. 8, 2001).

149. Defendants, either directly or through their agents, engaged in acts including, but not limited to the recruitment, transportation, transfer, harboring, or receipt of Plaintiffs. These acts were conducted through the use of force, the threat

22

1    of force, abduction, fraud, deception, the abuse of power, and/or a position of
2    vulnerability.

3         150.   Defendants trafficked Plaintiffs for the purposes of obtaining forced
4    labor or services.

5         151.   Aiding and abetting human trafficking is also a violation of the law of
6    nations and treaties of the United States and is actionable through the Alien Tort
7    Claims Act, 28 U.S.C. § 1350.

8         152.   Defendants aided and abetted human trafficking by directing, ordering,
9    conspiring to commit, or aiding human trafficking.

10        153.   Plaintiffs are entitled to compensatory and punitive damages in an
11   amount to be determined at trial and any other relief deemed appropriate.

12                         **NINETEENTH CLAIM FOR RELIEF**
13                         FEDERAL RACKETEERING INFLUENCED
                           CORRUPT ORGANIZATIONS ACT ("RICO")
14                         (*Defendant Pure Forest as the Enterprise and*
15                         *Defendants Jeff Wadsworth and Owen Wadsworth*)

16        154.   Plaintiffs repeat and re-allege the allegations contained in paragraphs 1
17   through 153 of this complaint as if fully set forth herein.

18        155.   This claim is brought by Plaintiffs against defendants Jeff Wadsworth
19   and Owen Wadsworth of Pure Forest ("RICO I Defendants").

20        156.   Defendant Pure Forest is a corporation, and therefore an enterprise, for
21   the purpose of 18 U.S.C. § 1961(4).

22        157.   RICO I Defendants organized, conspired, and participated in a
23   criminal worker exploitation scheme designed fraudulently to obtain government
24   approval to employ H-2B workers in order to subject the workers to forced labor
25   and exploit them for personal profit.

26        158.   In furtherance of this criminal worker exploitation scheme, the RICO I
27   Defendants unlawfully conducted and participated in the affairs of the enterprise,
28   both directly and indirectly, through a pattern of racketeering activity in violation of

23

1    18 U.S.C. § 1962(c) and § 1962(d).

2       159.   The RICO I Defendants knowingly and willfully committed, and

3    conspired to commit, the following predicate acts under RICO, 18 U.S.C.

4    § 1961(1):

5           a)  subjected Plaintiffs to forced labor in violation of 18 U.S.C.

6               § 1589(a)(2)-(3);

7           b)  recruited and transported Plaintiffs for the purpose of subjecting them

8               to forced labor in violation of 18 U.S.C. § 1590;

9           c)  fraudulently obtained H-2B visas by knowingly making false claims

10              and statements about the nature of the work and the wage to be paid in

11              violation of 18 U.S.C. § 1546;

12          d)  committed mail and wire fraud in violation of 18 U.S.C. §§ 1341 and

13              1343, respectively, by sending fraudulent visa applications to U.S.

14              DOL and U.S. CIS;

15          e)  threatened physical violence, either directly or through their agents, in

16              violation of 18 U.S.C. § 1951; and

17          f)  robbed and/or extorted Plaintiffs of their property in violation of 18

18              U.S.C. § 1951.

19      160.   In furtherance of this criminal worker exploitation scheme, the RICO I

20   Defendants conspired unlawfully to conduct the affairs of an enterprise, both

21   directly and indirectly, through a pattern of racketeering activity in violation of 18

22   U. S.C. § 1962(d).

23      161.   The RICO I Defendants knew or should have known that inherent to

24   the illegal worker exploitation scheme which they conspired to commit, the

25   following predicate acts under 18 U.S.C. § 1961(1) would be committed:

26          a)  fraudulently obtained H-2B visas by knowingly making false claims

27              and statements about the nature of the work and the wage to be paid in

28              violation of 18 U.S.C. § 1546;

24

COMPLAINT

la-1233026

      b) committed mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343, respectively, by sending fraudulent visa applications to U.S. DOL and U.S. CIS;

      c) threatened physical violence, either directly or through their agents, in violation of 18 U.S.C. § 1951; and

      d) robbed and/or extorted Plaintiffs of their property in violation of 18 U.S.C. § 1951.

162.   Each RICO I Defendant possessed knowledge of the general nature and contours of the criminal worker exploitation scheme.

163.   Each RICO I Defendant possessed knowledge that the conspiracy extended beyond their individual roles.

164.   Each RICO I Defendant conspired and agreed to further the criminal worker exploitation scheme, which resulted in the commission of the predicate acts described above.

165.   Each RICO I Defendant shared the same intent as their co-conspirators and had reason to believe that the criminal worker exploitation scheme would lead to the commission of the predicate acts described above.

166.   The predicate acts of racketeering activity described above constitute a "pattern of racketeering activity" as defined in 18 U.S.C. § 1961(5).

167.   The predicate acts were related to one another: they were committed against the same individuals (the Plaintiffs) and for the same purposes (furtherance of the criminal worker exploitation scheme and personal profit).

168.   The predicate acts were related to the enterprise. RICO I Defendants could not successfully conduct or conspire to conduct the criminal worker exploitation scheme without the associations that formed the enterprise.

169.   Upon information and belief, the racketeering activity took place over the course of multiple years.

25

la-1233026

1    170.   Such acts of racketeering activity have been part of the RICO I

2  Defendants' regular way of doing business through the enterprise, which implies a

3  threat of continued criminal activity.

4    171.   Plaintiffs bring suit under 18 U.S.C. § 1964(c) to recover treble

5  damages for injuries sustained by Plaintiffs as a result of the RICO I Defendants'

6  violation of 18 U.S.C. § 1962(c) and (d).

7                              **PRAYER FOR RELIEF**

8    WHEREFORE, Plaintiffs respectfully request that this Court:

9    172.   Award Plaintiffs monetary damages for unpaid wages and unpaid

10 overtime plus liquidated damages in an equal amount and interest, as provided by

11 the FLSA, 29 U.S.C. § 216(b), in the amount of $20,300.00 for each of Does I-III

12 and $11,000.00 for each of Does IV-V or an amount to be determined at trial;

13    173.   Award Plaintiffs, for each violation of AWPA, the amount of his

14 actual damages in the amount of $20,300.00 for each of Does I-III and $11,000.00

15 for each of Does IV-V or an amount to be determined at trial plus interest or up to

16 $500 in statutory damages, as provided by the AWPA, 29 USC § 1854;

17    174.   Award Plaintiffs  unpaid wages and overtime wages pursuant to

18 California Labor Code §§ 1194, 1194.2, 1197, 1197.1, 1198 and 226.7, in the

19 amount of $26,200.00 for each of Does I-III and $14,000.00 for each Does IV-V or

20 in an amount to be determined at trial;

21    175.   Award Plaintiffs compensatory damages in the amount of $100,000

22 each or in an amount to be determined at trial.

23    176.   Award Plaintiffs damages for emotional distress in the amount of

24 $100,000 each or in an amount to be determined at trial.

25    177.   Award treble damages to Plaintiffs for violations of California Civil

26 Code § 52.5(b) and the Racketeer Influenced and Corrupt Organizations Act, 18

27 U.S.C. §§ 1961 et seq., in an amount to be determined at trial.

28    178.   Award restitution to Plaintiffs pursuant to Mandatory Victim's

26

COMPLAINT

la-1233026

1  Restitution Act (2000) 18 U.S.C. § 3663 in an amount to be determined at trial.

2      179.  Award attorneys' fees and costs to Plaintiffs pursuant to 18 U.S.C §

3  1964(c) (RICO); 29 U.S.C. § 216(b) (FLSA); California Labor Code §§ 1194,

4  1194.2, 1197, 1198 and 226.7; 18 U.S.C. § 1595 (TVPA); and California Civil

5  Code § 52.5 (CTVPA).

6      180.  Issue a permanent injunction barring defendants from contacting

7  Plaintiffs or their families.

8      181.  Grant such additional and further relief as the Court deems just and

9  proper.

11  Dated:      April 8, 2014          MORRISON & FOERSTER LLP

14                                     By: /s/ Sean P. Gates
                                           SEAN P. GATES

15                                        Attorney for Plaintiffs
16                                        John Doe I, John Doe II, John
                                          Doe III, John Doe IV, and John
17                                        Doe V

27

COMPLAINT

la-1233026